1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JEFFREY E. WALKER,                      Case No. 15-cv-05819-HSG

8                     Plaintiff,             **ORDER GRANTING REQUEST FOR
                                             JUDICIAL NOTICE; GRANTING**
9              v.                            **REQUEST TO FILE UNDER SEAL
                                             CERTAIN PORTIONS OF**
10   KROL, et al.,                           **SUPPLEMENTAL BRIEFING;
                                             DENYING MOTION TO VACATE**
11                    Defendants.            **JUDGMENT PURSUANT TO FED. R.
                                             CIV. P. 60(b)(6); DENYING REQUEST**
12                                           **FOR COUNSEL**

13                                           Re: Dkt. Nos. 49, 58, 60, 65

14

15          Plaintiff, an inmate housed at San Francisco County Jail, filed this *pro se* action pursuant

16   to 42 U.S.C. § 1983 in December 2015.  Now pending before the Court are the following motions:

17   (1) Plaintiff's renewed motion to vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(6), Dkt.

18   No. 49; (2) Defendants' request to file certain documents under seal, Dkt. No. 58; (3) Defendants'

19   request for judicial notice, Dkt. No. 60; and (4) Plaintiff's request for appointment of counsel, Dkt.

20   No. 65 at 10.  For the reasons set forth below, the Court GRANTS Defendants' request to file

21   under seal certain portions of their supplemental briefing, Dkt. No. 58; GRANTS Defendants'

22   request for judicial notice, Dkt. No. 60; DENIES Plaintiff's request for appointment of counsel,

23   Dkt. No. 65 at 10; and DENIES Plaintiff's motion to reopen, Dkt. No. 49.

24                                    **BACKGROUND**

25   **I.     Procedural History**

26          On or about December 18, 2015, Plaintiff filed this *pro se* action pursuant to 42 U.S.C.

27   § 1983.  He alleged that, in or around June 2015, while he was housed at San Francisco County

28   Jail as a pretrial detainee, his conditions of confinement violated the Fourteenth Amendment.  Dkt.

United States District Court
Northern District of California

Nos. 1, 9.  Defendants attempted to take Plaintiff's deposition on November 18, 2016 and March 23, 2017.  Dkt. No. 30.  At the November 13, 2016 deposition, Plaintiff stated that he could not participate in the deposition because he was suffering severe side effects from recently administered court-ordered medication.  The deposition was suspended due to Plaintiff's refusal to be deposed.  *See* Dkt. No. 51-2.  At the March 23, 2017 deposition, Plaintiff refused to be deposed, stating that he had been unaware that the deposition would be taking place, and that his court-ordered medication, Prolixin and Depakote, was causing him severe cognitive issues.  *See* Dkt. No. 51-3.

On June 13, 2017, the Court ordered Plaintiff to show cause why Defendants' motion to dismiss the action with prejudice based on Plaintiff's repeated refusals to sit for his deposition should not be granted.  Defendants argued that Plaintiff's refusal to sit for the deposition prevented Defendants from gathering evidence concerning the complaint's allegations.  Dkt. No. 33.  Plaintiff did not file an opposition to Defendants' motion to dismiss; did not respond to the Court's order to show cause; and did not communicate with the Court.[1]  On August 7, 2017, after carefully considering the relevant caselaw and the record, the Court dismissed this action with prejudice for failure to prosecute in a reasoned order.  Dkt. No. 35.

On January 6, 2022, more than four years after this case was dismissed with prejudice, Plaintiff wrote the Court, asking to proceed with it.  Dkt. No. 37.  In this letter, Plaintiff stated that he had been unable to follow through with this case because, starting in 2016, he was mentally impaired due to the forcible administration of court-ordered anti-psychotic medication.  *Id.*  He stated that he was now "ok" and would like to proceed with this case.  *Id.*

On January 28, 2022, Plaintiff filed a motion to reinstate the case, which the Court construed as a Fed. R. Civ. P. 60(b)(6) motion for leave to vacate, or set aside, the judgment.  Dkt. Nos. 38, 44.  On July 29, 2022, the Court denied Plaintiff's request to vacate the judgment, finding that Plaintiff had not demonstrated the required "extraordinary circumstances" or "manifest injustice" required to set aside a judgment under Fed. R. Civ. P. 60(b)(6) for the following

---

[1] As of June 13, 2017, Plaintiff's last communication with the Court had been eight months earlier, on October 31, 2016.

2

1     reasons: (1) Plaintiff's claim that the anti-psychotic medication rendered him unable to prosecute

2     the case for over four years was dubious given Plaintiff's ability to pursue other cases in state

3     court during that same time period; (2) Plaintiff had not explained why he did not pursue the case

4     upon no longer being medicated in 2021; (3) Plaintiff had failed to demonstrate diligence in

5     pursuing this case because he had actively litigated other court cases for over a year after no

6     longer being medicated before he sought to reopen; and (4) the court's interest in finality and the

7     delay between the finality of the judgment and the motion to vacate weighed against Plaintiff

8     because the motion to vacate was filed five years after the case was closed, and evidence was

9     likely no longer available. *See generally* Dkt. No. 48.

10          On October 17, 2022, Plaintiff filed a renewed motion to vacate the judgment and reopen

11    the case pursuant to Fed. R. Civ. P. 60(b)(6).  Dkt. No. 49.  Defendants filed an opposition.  Dkt.

12    No. 51, and Plaintiff filed a reply, Dkt. No. 52.  On July 6, 2023, the Court ordered the parties to

13    file supplemental briefing addressing: (1) Plaintiff's medical treatment and medication regimen

14    from July 2020 to March 2021; and (2) Plaintiff's mental capacity from July 2020 to March 2021.

15    Dkt. No. 54.  Defendants timely filed their supplemental brief on September 25, 2023.  Dkt. Nos.

16    57, 59, 60.  Plaintiff did not file his supplemental brief by the court-ordered deadline of October

17    23, 2023. On December 6 and 8, 2023, over a month after the deadline had passed, Plaintiff

18    requested an extension of time to file his supplemental briefing, stating that additional time was

19    needed because he was simultaneously prosecuting multiple other cases, including his civil

20    commitment case; he had been hospitalized in July 2023; carpel tunnel and hand surgery had

21    limited his ability to write for a while; he was suffering from numerous health issues, including

22    COVID-19 and kidney failure; and, as of December 6, 2023, he had not received Defendants'

23    supplemental brief.  Plaintiff also stated that he needed his Coalinga State Hospital mental health

24    records from 2016 to 2021.  *See generally* Dkt. Nos. 61, 62.  Defendants opposed the request for

25    an extension of time, arguing that Plaintiff had not shown the good cause required by Fed. R. Civ.

26    P. 6 because he had not explained why he sought an extension of time 45 days after the filing

27    deadline; Plaintiff's hand surgery only reduced his working hours by half; Plaintiff's other

28    lawsuits did not constitute excusable neglect for missing the deadline; and Plaintiff's request was

in bad faith as over four months had passed since the deadline and Plaintiff had not indicated when he might file his supplemental briefing. Defendants further argued that they had been prejudiced by Plaintiff's delays throughout the life of this case. Dkt. No. 63. On March 6, 2024, the Court agreed that Plaintiff had not demonstrated good cause for an extension of time, but granted him an extension in the interests of justice:

> The Court agrees that Plaintiff has not demonstrated good cause for the extensive delay in filing the supplemental briefing.
> Plaintiff's choice to file numerous lawsuits does not constitute good cause for delaying this (or any other) case. In addition, delays prejudice the opposing party and affect the availability of relevant evidence. Moreover, Defendants note that Plaintiff has failed to meet deadlines in his other cases as well, Dkt. No. 63 at 3 n.2, casting doubt on this claim that other litigation prevents him from meeting the deadlines in this case and raising concerns about his regard for court deadlines. Dkt. No. 63 at 3 n.2.
> Plaintiff's hand injury does not constitute good cause for granting an extension of time. Plaintiff's hand injury does not seem to have significantly affected his litigation activity, as he reports that he is still actively litigating numerous cases.
> Finally, if Plaintiff seeks his medical records, he should request them directly from Coalinga State Hospital. Neither the Court nor Defendants are responsible for providing Plaintiff with these records. Given that these are Plaintiff's personal medical records, it is unclear why Plaintiff is unable to obtain them. However, if Plaintiff believes that that he requires a subpoena to access these records, he may file a request with this Court for issuance of a subpoena. The request must be accompanied by a showing that Plaintiff is only able to obtain these records via a third-party subpoena. [FN 2] The Court notes that Plaintiff has been aware of the need for these records since supplemental briefing was ordered on July 6, 2023.
> However, in the interests of justice, the Court GRANTS Plaintiff a final extension of time to April 8, 2024 to file the supplemental briefing ordered by the Court on July 6, 2023. With this extension of time, Plaintiff will have been granted approximately a five month extension of time. No further extensions of time will be granted. Plaintiff's motion to reopen pursuant to Fed. R. Civ. P. 60(b)(6), Dkt. No. 49, will be deemed submitted as of April 8, 2024, and the Court will decide the motion based on the pleadings deemed submitted as of April 8, 2024. The Court will apply the mailbox rule to Plaintiff's filings. [FN 3]

> FN 2: For example, Plaintiff should provide documentation of his requests for the requested records and the denials.

> FN 3: In determining when a Section 1983 suit filed by a pro se prisoner is filed, the "mailbox" rule applies. *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). A Section 1983 complaint is considered to be filed on the date a prisoner delivered it to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

Dkt. No. 63 at 2-3. On March 15, 2024, Plaintiff filed a pleading titled "Plaintiff's reply to opposition to continue deadline to submit supplemental briefing (Dkt. No. 62) (Request for Counsel) Partial Supplemental Briefing and Exhibits." Dkt. No. 65. As of the date of this order, Plaintiff has not filed any additional pleadings with the Court.

4

1

United States District Court
Northern District of California

## II.    Relevant Factual Background[2]

When Plaintiff filed this action in 2015, he was serving a prison term for a 2005 pandering conviction (Cal. Penal Code § 266i).  *See Walker v. Sup. Ct.*, 12 Cal. 5th 177, 186 (2021), *as modified on denial of reh'g* (Oct. 13, 2021); *see also People v. Walker*, C Nos. A164170, 164171, A164172, 2023 WL 386763, at *1 (Cal. Ct. App. Jan. 25, 2023).  In June 2015, before his prison commitment ended, Plaintiff was committed as a sexually violent predator, pursuant to the Sexually Violent Predator Act, Cal. Welf. & Inst. Code § 6600 *et seq*.  Dkt. No. 38 at 8.

### A.    Plaintiff's Medication History from 2016 to November 2021

In 2016, Plaintiff was diagnosed as bipolar with attendant delusions and paranoia. Plaintiff's mental illness and medications have numerous side effects, including sedation, mental impairment, uncontrollable face and hand movements, anxiety attacks, and heart trouble.  Dkt. No. 49 at 7; Dkt. No. 52 at 38.

On November 1, 2016, a state court made the finding that Plaintiff lacked capacity to make his own decisions about medication because of his mental illness, and ordered that Plaintiff be forcibly administered Prolixin, an anti-psychotic medication.  Dkt. No. 49 at 7.  In December 2016, Plaintiff's treatment team agreed that Plaintiff was not competent to make decisions about his medications.  In January 2017, a Fresno County Superior Court judge found that Plaintiff was a danger to others and not competent to refuse medication and ordered that Plaintiff be involuntarily medicated.  Dkt. No. 49 at 11.  From 2017 to March 2021, state courts renewed the court orders requiring that Plaintiff be administered anti-psychotic medications, based on findings that Plaintiff remained incompetent to refuse medication, that Plaintiff suffered from mental illness, and that Plaintiff was impaired.  These state court orders noted that the medication caused Plaintiff side effects, such as severe sedation, and that his medication was adjusted or changed to meet his needs.  Dkt. No. 49 at 7, 11; Dkt. No. 52 at 9-10.  Plaintiff alleges that the medication rendered him unable to function.  Dkt. No. 49 at 12-13.

A July 6, 2020 monthly psychiatric progress note reported that Plaintiff had been

---

[2] The following facts are undisputed unless otherwise indicated.

1   diagnosed with, and was being treated for, *inter alia* Unspecific Paraphilic Disorder and Bipolar I

2   Disorder, and that, pursuant to an involuntary medication order, Plaintiff was being administered

3   daily 400 mg Seroquel, 1000 mg Depakote, 20 mg Inderal/Propranolol, 10 mg

4   Zyprexa/Olanzapine, 10 mg Zyprexa/Olanzapine Zydis.  Dkt. No. 58-6 at 25-28.  The progress

5   note reported that Plaintiff was spending "a lot of time in working on his legal matters . . ." *Id.*

6          An August 11, 2020 rehabilitation therapy progress note reported that Plaintiff continued

7   to refuse to participate in the Sex Offender Treatment Program or other groups; that, as of August

8   2020, Coalinga State Hospital was not offering any groups because of the COVID-19 pandemic;

9   that Plaintiff continued to work in an IT vocational janitorial position; that Plaintiff was focused

10  on his upcoming court case; that Plaintiff spent the majority of his time sleeping or in the dorm

11  room on the phone; and that Plaintiff had stated that he was not concerned with attending groups.

12  Dkt. No. 58-6 at 6-7.

13         A September 11, 2020 monthly psychiatric progress note reported that Plaintiff's

14  medication regimen remained unchanged.  The progress note reported that Plaintiff refused to

15  participate in Sexual Offender Treatment programs, group therapy, individual therapy, or any

16  other treatment because he believed that his lawyer had advised him that he did not meet the

17  criteria for a sexually violent predator.  The progress note further reported that Plaintiff was "in

18  the progress of either filing a lawsuit on several members of the staff on this Unit and he strongly

19  believes the staff were responsible for misrepresenting him or mistreating him."  Dkt. No. 58-6 at

20  20-24.

21         A November 10, 2020 rehabilitation therapy progress note reported that Plaintiff continued

22  to refuse to participate in the Sex Offender Treatment Program or other groups; that Coalinga

23  State Hospital was now offering selected active treatment and supplemental groups; that Plaintiff

24  continued to work in an IT vocational janitorial position; that Plaintiff was focused on his

25  upcoming court case; that Plaintiff spent the majority of his time sleeping or in the dorm room on

26  the phone; and that Plaintiff had stated that he was not concerned with attending groups.  Dkt. No.

27  58-6 at 6-7.

28         On November 10, 2020, Plaintiff met with his treatment team to discuss the upcoming

expiration of the court order authorizing involuntary medication.  Plaintiff agreed to consent to medication, and his treatment team agreed to gradually reduce his medications so that he would not have withdrawal from the psychotropic medication.  Plaintiff's medications were adjusted as follows: 400 mg Seroquel to be gradually reduced, 1000 mg Depakote to be gradually reduced, 20 mg Inderal/Propranolol to be gradually reduced and then discontinued, 10 mg Zyprexa/Olanzapine to be discontinued at expiration of medication order, 10 mg Zyprexa/Olanzapine Zydis to be discontinued when the court order expired.  Dkt. No. 58-6 at 16-19.  The progress note reported that Plaintiff continued to refuse to participate in any Sex Offender Treatment Program or other therapies because he believed he did not meet the criteria for an SVP; and that Plaintiff had no problems with his activities of daily living.  *Id.*

A February 3, 2021 monthly psychiatric progress note reported that, as of February 2021, Plaintiff was no longer taking any psychotropic medications.  His Seroquel and Depakote medication had been gradually titrated over a two-month period, and ultimately discontinued.  Plaintiff was taking Benadryl and propranolol daily, and the propranolol would soon be discontinued.  The psychiatrist reported that Plaintiff had "adjusted very well without having these [psychotropic] medications;" and that Plaintiff reported feeling "a lot more alert with a lot more energy and is more functional."  Dkt. No. 58-6 at 13.  The psychiatrist reported that Plaintiff was "very intelligent and has no difficulty in carrying on his activities of daily living (ADL)" and that he been assigned a job as an Industrial Technology worker and was able to maintain his work with some minor inconsistencies in his job performance.  Dkt. No. 58-6 at 12-15.

A March 3, 2021 monthly progress note reported that Plaintiff was taking Benadryl and propranolol daily, but no other medications, and that the goal was to gradually reduce, and eventually discontinue, the propranolol.  The progress note further reported that Plaintiff's bipolar disorder was in remission.  The progress note also reported that Plaintiff continued to refuse to participate in any Sex Offender Treatment Program or other individual treatment because he believed he did not meet the criteria for an SVP; and that Plaintiff was "highly preoccupied with his legal work and spend[ing] enormous amount of time communicating with his lawyer and other agencies in order to address his issues."  Plaintiff continued to retain his daily IT Job, but

1    inconsistencies were reported regarding his job performance, in part because he was spending time

2    on his personal work instead.  Dkt. No. 58-6 at 8-11.

3          Plaintiff does not directly dispute the progress notes' description of his mental state,

4    capabilities, and participation in therapy groups.  However, Plaintiff states that he did not have

5    capacity to pursue this litigation after his psychotropics medications were stopped because he was

6    not "fully" functioning after the discontinuation of his psychotropic medications.  Plaintiff further

7    states that he had limited time to pursue litigation because, since March 2021, he has been required

8    to attend hospital groups which met five days a week, several times a day, lasting approximately

9    two hours each time.  Dkt. No. 49 at 14.

10          **B.    Plaintiff's Relevant *Pro Se* Litigation History Prior to January 28, 2022**

11          Plaintiff is a frequent litigant in both state and federal courts.  Plaintiff has filed seven civil

12    rights actions in the Eastern District of California;[3] eleven civil rights actions in this district,

13    including this action;[4] and six habeas petitions in this district.[5]  Of these actions, three were filed

14    in 2020 or later.  On October 17, 2013, in *Walker v. Mohadjer, et al.*, 9th Cir. C No. 13-17041

15    ("*Mohadjer*"), the Ninth Circuit Court of Appeals issued an order finding *inter alia* that Plaintiff

16    had had three or more actions or appeals dismissed as frivolous or for failure to state a claim:

17    *Walker v. San Francisco Cty. Jail*, C No. 3:08-cv-01264 CRB (N.D. Cal.); *Walker v. Jane Doe*, C

18    No. 3:08-cv-01265 CRB (N.D. Cal.); and *Walker v. Gradillas, et al.*, C No. 3:09-cv-02845 CRB

19    (N.D. Cal.).  *See Mohadjer*, Dkt. No. 3 (9th Cir. Oct. 17, 2013).  The Ninth Circuit ultimately

20

21    _____

    [3] *See, e.g., Walker v. Beshara, et al.*, C No. 1:20-cv-01050-JLT-HBK (PC); *Walker v. Wechsler et
22    al.*, C No. 1:16-cv-01114-SKO (PC); *Walker v. Greer et al.*, C No. 2:13-cv-01467-DAD (PC);
    *Walker v. Mohadjer et al.*, C No. 2:13-cv-01193-WBS-AC (PC); *Walker v. Phillips et al.*, C No.
23    2:11-cv-00636-MCE-CKD (PC); *Walker v. Silbugh et al.*, C No. 2:09-cv-00916-WBS-DAD (PC);
    *Walker v. Whitten, et al.*, C No. 2:09-cv-00642-WBS-CKD (PC).
    [4] *Walker v. Guzman, et al.*, C No. 5:22-cv-00904 EJD; *Walker v. Osha, et al.*, C No. 5:22-cv-07651
24    EJD; *Walker v. San Francisco County Jail, et al.*, C No. 15-cv-5820 HSG; *Walker v. Kuhns et al.*,
    C No. 3:09-cv-03015-CRB; *Walker v. Gradillas et al.*, C No. 3:09-cv-02845-CRB; *Walker v. San
25    Francisco Cty. Jail et al.*, C No. 3:08-cv-01265-CRB; *Walker v. San Francisco Cty. Jail et al.*, C
    No. 3:08-cv-01264-CRB; *Walker v. Doe 1*, C No. 3:08-cv-00802-CRB; *Walker v. Lovelle et al.*, C
26    No. 3:08-cv-00801-CRB; *Walker v. Jones et al.*, C No. 3:08-cv-00757-CRB.
    [5] *Walker v. People of the State of Calif.*, C No. 5:18-cv-01481-EJD; *Walker v. People of the State
27    of Calif.*, C No. 5:17-06714-EJD; *Walker v. People of the State of Calif.*, C No. 15-cv-5826 EJD;
    *Walker v. Cash*, C No. 11-cv-05797 EJD; *Walker v. Sullivan*, C No. 5:11-cv-03177 EJD; *Walker
28    v. Marshal*, C No. 10-cv-01146 EJD.

declined to revoke Plaintiff's *in forma pauperis* status in *Mohadjer*.  *See Mohadjer*, Dkt. No. 5

(9th Cir. Nov. 12, 2013).

### 1.    November 2016 to July 2020

From November 2016, when Plaintiff was first involuntarily medicated, to July 2020,

when his medications were lowered, Plaintiff did not pursue or commence any *pro se* litigation.[6]

Plaintiff reports that after his medication dosage was lowered in June 2020, he was restored to

partial functioning and felt capable of again pursuing litigation.  Dkt. No. 52 at 37.

### 2.    July 2020 – December 2020

On or about July 30, 2020, Plaintiff filed a *pro se* civil rights action in the Eastern District

of California, *Walker v. Beshara, et al.*, C No. 20-cv-01050 JLT-HBK (E.D. Cal.) ("*Beshara*").  In

2020, Plaintiff filed three pleadings in *Beshara*:

- August 14, 2020: Motion to compel the Department of State Hospitals to provide Plaintiff with legal paper, envelopes, copies, and mailings on August 14.  *See Beshara*, Dkt. No. 6.

- October 20, 2020: Motion to compel defendants to answer the complaint.  *See Beshara*, Dkt. No. 8.

- December 9, 2020: Motion to compel defendants to respond to the magistrate judge consent form and to compel the United States Marshal to serve defendants.  *See Beshara*, Dkt. No. 10.

### 3.    2021

In 2021, Plaintiff continued to litigate *Beshara*; renewed two previously filed Cal. Penal

Code § 851.8(c) petitions to seal and destroy his arrest records, *People v. Walker*, C Nos.

A164170, A164171, A164172, 2023 WL 386763, at *1 (Cal. Ct. App. Jan. 25, 2023), *as modified

on denial of reh'g* (Feb. 21, 2023) ("*Walker SF Section 851.8 Petition*");[7] *People v. Walker*, No.

---

[6] During this time period, Plaintiff was represented by counsel in a civil commitment hearing. *Walker v. Sup. Ct. of City & Cnty. of San Francisco*, 51 Cal. App. 5th 682, 687 (Cal. Ct. App. 2020), *rev'd and remanded sub nom. Walker v. Sup. Ct.*, 12 Cal. 5th 177 (Cal. 2021), *as modified on denial of reh'g* (Oct. 13, 2021).

[7] The initial petition *Walker SF Section 851.8 Petition* was filed on October 21, 2015, and sought to seal arrest records in three separate criminal cases, C Nos. A164170, A164171, A164172, all of which had been closed over a decade prior.  At the February 2017 hearing for this petition, the court took the matter off calendar without prejudice pursuant to a request made by Plaintiff's appointed counsel for an unrelated matter who made a special appearance in this proceeding on Plaintiff's behalf.  Counsel stated that request was because Plaintiff was "undergoing various medical procedures . . ."  *Walker SF 851.8 Petition*, 2023 WL 386763, at *1.

H049341, 2022 WL 2112894, at *1 (Cal. Ct. App. June 10, 2022) ("*Walker Santa Clara Section 851.8 Petition*");[8] and filed at least three writs of habeas corpus in the San Francisco Superior Court, challenging his 2005 conviction for pandering: Writ Nos. 7534, 7550, and 7572.  Dkt. No. 38 at 8-10.  Below is a list of the filings and court hearings or orders in these cases.

- January 11, 2021, *Walker SF Section 851.8 Petition*: Renewal of previously filed Cal. Penal Code § 851.8 petition, on the grounds that Plaintiff had been unaware that he was factually innocent of the sex offenses until 2015; that Plaintiff had been unable to file the petition earlier because he had been on forced medication from 2017 to March 2020 and his medication had only recently been reduced; that Plaintiff had been diligent in pursuing Cal. Penal Code § 851.8 relief; and that the court should excuse his delay in filing the petition because he was ignorant of the law or, in the alternative, the court should issue an order to show cause, pursuant to *People v. Bermudez*, 172 Cal.App.4th 966 (2009).[9]  *Walker SF Section 851.8 Petition*, 2023 WL 386763, at *1.

- February 12, 2021, *Beshara* – Motion for a temporary restraining order, requesting that certain hospital staff be prohibited from being in Unit No. 9.  *Beshara*, Dkt. No. 11.

- February 16, 2021, *Beshara* – Motion for a temporary restraining order, requesting that certain hospital staff be prohibited from being in Unit No. 9.  *Beshara*, Dkt. No. 12.

---

Per Cal. Penal Code § 851.1(p)(2), jurisdiction for C Nos. A164170, A164171 rested with the appellate division of the state superior court because these actions were Section 851.8 petitions involving arrests that did not result in accusatory pleadings.  Cal. Penal Code § 851.1(p)(2).  Accordingly, on January 25, 2023, the state appellate court transferred the Section 851.8 petitions in C Nos. A164170, A164171 to the appellate division of the state superior court.  *Walker SF Section 851.8 Petition*, at *1.

[8] The initial petition in *Walker Santa Clara Section 851.8 Petition* was filed on September 27, 2016 and sought to seal arrest records for a 1991 charge of forcible rape, over two decades prior.  The trial court denied the initial petition, finding that Plaintiff had failed to show good cause for the over two-decade delay in filing the petition following the 1991 sentencing and that he was ultimately convicted of a felony offense arising out of the same facts and circumstance.  *Walker Santa Clara Section 851.8 Petition*, at *1.  Plaintiff appealed the denial in March 2017, and counsel was appointed to represent him.  *Id.*  In April 2017, appointed counsel filed an opening brief pursuant to *People v. Serrano*, 211 Cal. App. 4th 496 (Cal. Ct. App. 2012), stating the case and facts, but raising no issues.  The state appellate court notified Plaintiff of his right to submit written argument on his own behalf.  On June 6, 2017, the state appellate dismissed the appeal as abandoned following Plaintiff's failure to file a supplemental brief.  *Id.*

[9] The Court presumes that the state court order has the following typographical errors, which the Court has indicated by highlighting the errors in bold font.  The state court order states that Plaintiff asserted "that he did not know he was **not** factually innocent of the sex offenses until 2015."  *Walker SF Section 851.8 Petition*, at *1.  The Court presumes that the "not" was incorrectly added, as Plaintiff was alleging that he is factually innocent of the sexual offenses.  The state court order also stated that Plaintiff "further claimed that the court ordered him placed on "forced psychiatric medication" from 2017 until March **2021**."  *Walker SF Section 851.8 Petition*, at *1.  The Court presumes that the state court intended to refer to March 2020, as the renewed petition was filed in January 2021.

United States District Court
Northern District of California

10

- March 5, 2021, *Beshara* – Motion to clarify request for a temporary restraining order ("TRO") and raise other issues of concern. *Beshara*, Dkt. No. 15.

- March 19, 2021, *Beshara* - Motion to notify the Court that one of the staff members identified in his TRO request was back in his unit. *Beshara*, Dkt. No. 17.

- March 26, 2021, *Walker Santa Clara Section 851.8 Petition* – Motion filed to renew a previously filed Cal. Penal Code § 851.8(c) petition to seal and destroy his arrest records. *Walker Santa Clara Section 851.8 Petition*.

- March 30, 2021, *Walker SF Section 851.8 Petition* – Motion for reconsideration of March 4, 2021 denial of petition as untimely. *Walker SF Section 851.8 Petition*, 2023 WL 386763, at *2.

- April 12, 2021, *Beshara* – Motion for temporary restraining order. *Beshara*, Dkt. No. 18.

- April 14, 2021, *Beshara* – Motion requesting that the Court rule on his pending TRO request. *Beshara*, Dkt. No. 19.

- April – May 2021: *Walker Santa Clara Section 851.8 Petition* – On April 19, 2021, the Santa Clara County Superior Court denied Plaintiff's Section 851.8 motion, finding that Plaintiff was ineligible for relief under Cal. Penal Code § 851.8 because he had ultimately been convicted of a felony based on the same charged conduct that formed the basis for the dismissed charge. *Walker Santa Clara Section 851.8 Petition*, at *1. Plaintiff filed a motion for reconsideration of this denial, which was denied on May 18, 2021. *Id.*

- May 18, 2021: *Beshara* – Motion urgently requesting assistance because Plaintiff faced imminent danger. *Beshara*, Dkt. No. 20.

- May 24, 2021, *Walker SF Section 851.8 Petition* – Hearing held on Plaintiff's motion for reconsideration. *Walker SF Section 851.8 Petition*, 2023 WL 386763, at *2.

- June 7, 9, 21, and 28, 2021, *Beshara* – Plaintiff filed seven pleadings: a motion to remove the judge, a first amended complaint, objections to the report and recommendation, a motion requesting that the hospital provide legal envelopes, a motion for an order to show cause regarding his TRO, a motion for a TRO, and a motion for an injunction and a TRO. *Beshara*, Dkt. Nos. 25-32.

- July 13, 2021, *Walker Santa Clara Section 851.8 Petition* – Notice of Appeal. *Walker Santa Clara Section 851.8 Petition*, at *1.

- August 19, 2021, *Walker SF Section 851.8 Petition* – Second hearing held on Plaintiff's motion for reconsideration. *Walker SF Section 851.8 Petition*, 2023 WL 386763, at *2. The state appellate court summarized the hearing as follows:

  At a hearing on August 19, 2021, the court found that although "[t]here was additional detail in terms of the facts of the medications" Walker received when he was involuntarily medicated, "[t]he new circumstances or the arguments that have been made in the motion for reconsideration were the same arguments that were made before Judge Caffese [who ruled on the January 2021 petition]." The court also noted that Walker learned of the relief in section 851.8 in June 2015 but did not file it until November 2016: "So that's over a year since you admittedly knew of the availability of the

11

procedures that you could have, and did not file a petition at that time." The court further noted that Walker waited six months after his medication was reduced in June 2020 and he became competent to renew his petition. The court denied Walker's motion for reconsideration.

*Walker SF Section 851.8 Petition*, 2023 WL 386763, at *2.

- September 30, 2021, *Beshara* - Objection to the report and recommendation issued by the magistrate judge. *Beshara*, Dkt. No. 36.

- October 4, 2021, *Walker SF Section 851.8 Petition* – Another motion for reconsideration, which was denied. *Walker SF Section 851.8 Petition*, at *2.

### 4.   January 2022 to March 14, 2022

On January 28, 2022, Plaintiff filed a motion to reopen this case. Dkt. No. 37. On March 14, 2022, Plaintiff filed another case in this district, C No. 5:22-cv-00904 EJD, *Walker v. Guzman, et al*.

### DISCUSSION

### I.   Request to File Under Seal Certain Portions of Defendants' Supplemental Briefing (Dkt. No. 58)

Defendants have requested to file under seal (1) Exhibit A to their supplemental briefing, which consists of records of Plaintiff's medical and psychiatric treatment; and (2) the portions of the supplemental briefing that quote or discuss these medical records. Defendants argue that sealing these documents is appropriate because the medical records are confidential under the Health Insurance Portability and Accountability Act of 1996; because Plaintiff's medical and psychiatric treatment records are sensitive and confidential; and because the request is narrowly tailored in that Defendants only seek to seal Plaintiff's medical records and the references to them. Dkt. No. 58.

When considering motions to seal documents, the starting point is a strong presumption in favor of access. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). To overcome this strong presumption, the moving party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178-79 (quotation omitted). "In general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might

have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quotation omitted).  The court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.*  After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (quotation omitted).  Records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access, so parties moving to seal such records must meet the lower "good cause" standard of Fed. R. Civ. P. R. 26(c).  *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016).  The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed.  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (quotation omitted); *see also* Fed. R. Civ. P. 26(c).  N.D. Cal. L.R. 79-5 supplements the "compelling reasons" standard, requiring the party seeking to file documents under seal to "establish[ ] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" and to narrowly tailor the request to "seek sealing only of sealable material . . . ." N.D. Cal. L.R. 79-5(b).

The Court finds that compelling reasons are present here to grant the request to file under seal.  The need to protect medical privacy qualifies as a compelling reason for sealing records.  *Pratt v. Gamboa*, C No. 17-CV-04375-LHK, 2020 WL 8992141, at *2 (N.D. Cal. May 22, 2020) (quoting *Steven City Broomfield v. Aranas*, No. 17-CV-00683-MMD-WGC, 2020 WL 2549945, at *2 (D. Nev. May 19, 2020)); *see also San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, C No. 10-cv-02258-SBA, 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan 10, 2011) (finding that medical records are deemed confidential pursuant to HIPAA and *sua sponte* sealing portions of medical records).  This request is narrowly tailored and only seals the medical records and references to them.  The Court therefore GRANTS Defendants' motion to file under seal the records of Plaintiff's medical and psychiatric treatment that are attached as Exhibit A to the supplemental briefing; and the portions of the supplemental briefing that quote or discuss these

1    medical records.  Dkt. No. 58.  These portions of the filings shall remain under seal until the

2    conclusion of this case and any appellate proceedings.  If counsel for Defendants does not request

3    that the documents be returned following the conclusion of this case and any appellate

4    proceedings, the documents will be destroyed in conformance with the normal records destruction

5    policy of the United States Courts.

6    **II.      Request for Judicial Notice (Dkt. No. 60)**

7         Defendants request that the Court take judicial notice of the following filings filed by

8    Plaintiff in *Walker v. Beshara*, No. 20-cv-01050 (E.D. Cal.): (1) Complaint (Dkt. No. 1), attached

9    as Exhibit A to the Request for Judicial Notice ("RJN"); (2) Motion to Compel (Dkt. No. 6),

10   attached as Exhibit B to the RJN; (3) Motion for the Defendants to Answer the Complaint and to

11   Pick a Judge (Dkt. No. 8), attached as Exhibit C to the RJN; (4) Motion to Compel (Dkt. No. 10),

12   attached as Exhibit D to the RJN; (5) Motion for Temporary Restraining Order (Dkt. No. 11),

13   attached as Exhibit E to the RJN; (6) Motion for Temporary Restraining Order (Dkt. No. 12),

14   attached as Exhibit F to the RJN; and (7) Exhibit G, Letter from Plaintiff to Presiding Judge (Dkt.

15   No. 17), attached as Exhibit G to the RJN.  Defendants ask that the Court take judicial notice that

16   Plaintiff filed these documents.  *See generally* Dkt. No. 60.

17        Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not

18   subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

19   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

20   reasonably be questioned."  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics*, 899

21   F.3d 988, 999 (9th Cir. 2018).  The Court GRANTS Defendants' request for judicial notice of the

22   existence of the specified pleadings in *Walker v. Beshara*, No. 20-cv-01050 (E.D. Cal.), because

23   they are court pleadings or records that have a direct relation to the matters at issue.  *See Rosales-*

24   *Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014) ("It is well established that [federal courts]

25   may take judicial notice of proceedings in other courts."); U*.S. ex rel. Robinson Rancheria*

26   *Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take

27   notice of proceedings in other courts, both within and without the federal judicial system, if those

28   proceedings have a direct relation to the matters at issue.") (internal quotation marks and citation

United States District Court
Northern District of California

14

1    omitted).  The Court takes judicial notice of the fact that Plaintiff filed these particular pleadings

2    in *Beshara*.  The Court does not take judicial notice of these pleadings for the truth of the matters

3    asserted in them.  *In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal.

4    2010) (in considering defendant's motion to dismiss, court took judicial notice of existence of

5    unrelated court documents, but declined to take judicial notice of truth of matters set forth in these

6    documents); *see also McMunigal v. Bloch*, No. C 10–02765 SI, 2010 WL 5399219, *2 n.1 (N.D.

7    Cal. Dec. 23, 2010) (granting judicial notice of documents filed in another lawsuit for purposes of

8    noticing existence of lawsuit, claims made in lawsuit, and that various documents were filed, but

9    not for truth of matters asserted in documents).

10   **III.     Request to Set Aside Judgment Pursuant to Fed. R. Civ. P. 60(b)(6)**

11          Plaintiff has filed a renewed motion to vacate the judgment pursuant to Fed. R. Civ. P.

12   60(b)(6), Dkt. No. 49; and has filed a reply in support of this motion, Dkt. No. 52.  Defendants

13   have opposed this renewed motion to vacate in Dkt. No. 51 (opposition to the motion to vacate);

14   and Dkt. No. 59 (supplemental briefing).  The Court also considers Dkt. No. 65 in deciding this

15   motion.  Although Dkt. No. 65 is Plaintiff's reply in support of his request to continue the deadline

16   to submit supplemental briefing, this reply sets forth additional arguments in support of his motion

17   to vacate.

18          **A.     Legal Standard**

19          "[Fed. R. Civ. P. 60(b)(6)] has been used sparingly as an equitable remedy to prevent

20   manifest injustice and is to be utilized only where extraordinary circumstances prevented a party

21   from taking timely action to prevent or correct an erroneous judgment."  *United States v.*

22   *Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), *overruled on other grounds by United States v.*

23   *Washington*, 593 F.3d 790 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also*

24   *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864, (1988) (noting Rule 60(b)(6)

25   should be applied only in "extraordinary circumstances"); *Latshaw v. Trainer Wortham & Co.*,

26   452 F.3d 1097, 1103 (9th Cir. 2006) ("Judgments are not often set aside under Rule 60(b)(6);"

27   Rule 60(b)(6) is "equitable remedy" used to "prevent manifest injustice").  To reopen a case under

28   Rule 60(b)(6), a party must establish "both injury and circumstances beyond his control that

United States District Court
Northern District of California

prevented him from proceeding in a proper fashion." *Washington*, 394 F.3d at 1157. (internal quotations omitted).  In considering whether to grant a Rule 60(b)(6) motion, the following factors may be relevant to the analysis: (1) whether the plaintiff has made a showing of extraordinary circumstances, such as a change in intervening law; (2) whether the plaintiff exercised diligence in pursuing the issues; (3) interest in finality; (4) delay between the finality of the judgment and the motion for Rule 60(b)(6) relief; and (5) the degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought.[10]  *See Henson v. Fidelity Nat'l Financial, Inc*., 943 F.3d 434, 440 (9th Cir. 2019) (factors set forth in *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009), which considered Fed. R. Civ. P. 60(b)(6) relief in context of habeas proceedings, are also relevant in civil rights context).  The Court must consider all of the relevant circumstances surrounding the specific Rule 60(b)(6) motion.  *Id.*

## B.     Plaintiff's Briefing (Dkt. Nos. 49, 52, 65)

Plaintiff's briefing is extensive, totaling 58 pages of argument and 58 pages of exhibits, and seemingly presents every objection Plaintiff has to the Court's rulings in this case, whether or not the objection is relevant to the specific question pending before the Court, which is whether Plaintiff has demonstrated that he is entitled to relief under Fed. R. Civ. P. 60(b)(6).

Plaintiff argues that this Court should set aside the judgment and reopen this case because (1) his mental impairment from the involuntary medication, his other time-sensitive litigation, and prison conditions limited his ability to litigate, and that these limitations constituted extraordinary circumstances; (2) Defendants will not be prejudiced by reopening the case at this date because all the evidence is available through jail and medical records, all the witnesses are alive and still working at the jail, and recollection of incidents can be refreshed through admissible documentary evidence, such as grievances and complaints; and (3) the interest in finality is outweighed by the interest in justice, which is served by holding Defendants accountable for their wrongful actions. *See generally* Dkt. Nos. 49, 52, 65.

Plaintiff makes the following arguments in support of his claim that he suffered from

---

[10] *Henson* lists a sixth factor to consider, comity, but this factor is only applicable where a federal habeas petition challenges a state conviction.  *Henson*, 934 F.3d at 453.

United States District Court
Northern District of California

limitations on his ability to litigate that constituted extraordinary circumstances.[11]

First, Plaintiff argues that the following is evidence that he was mentally impaired until January 2022. Plaintiff was diagnosed as bipolar with attendant delusions and paranoia, delusional, impaired, and unable to take care of himself. Dkt. No. 49 at 7, 9-10, 20; Dkt. No. 52 at 7-9; Dkt. No. 65 at 1-2, 5. From November 2016 to March 2021, various courts ordered that Plaintiff be involuntarily medicated based on findings that Plaintiff was incapable of making medication decisions and of understanding the benefits of taking psychiatric medication. Both Coalinga State Hospital and state courts found Plaintiff mentally incompetent to stand trial, within the meaning of Cal. Penal Code § 1367(a) by. Dkt. No. 49 at 19; Dkt. No. 52 at 8. From November 1, 2016 to approximately October 2020, the court-ordered medication rendered Plaintiff "mentally impaired, incompetent, and not able . . . to prosecute or continue with the deposition request going forward." Dkt. No. 49 at 12 (emphasis in original); *see also* Dkt. No. 49 at 7-12; Dkt. No. 52 at 9-11; Dkt. No. 65 at 1-2. At his November 2016 and March 2017 depositions, Plaintiff informed Defendants' counsel that he had been administered severe psychotropic medication and was suffering significant side effects from the medication that prevented him from participating effectively in his deposition. Dkt. No. 49 at 6-9; Dkt. No. 52 at 5-7, 11-14; Dkt. No. 65 at 2-3. When the medication was reduced in or about August 2020, Plaintiff became "partialy (sic) functioning," which allowed him to file *Beshara*. Dkt. No. 49 at 12-13, 20; *see also* Dkt. No. 65 at 3 ("Once Plaintiff's medication was lowered, he was able to slightly function enough to file lawsuits [and] to pick up where he left off in numerous litigations [but] he was unable to litigate due to (mental impairment) incapacitated, which later included the filing of this claim and request to vacate judgment."). Even after Plaintiff was fully off anti-psychotic medications in March 2021, he was not able to fully function. Dkt. No. 49 at 14; Dkt. No. 65 at 6.

---

[11] Plaintiff also makes the additional arguments that the Court erred in denying his initial motion to reopen this action; and that his request to reopen is not barred either by res judicata or the statute of limitations. The Court does not address these arguments in detail because any prejudice caused by the denial of the initial motion to reopen has been cured by allowing Plaintiff to bring this motion to reopen, and because Defendants no longer argue that this action is barred by either res judicata or the statute of limitations.

Second, Plaintiff argues that litigating his Section 851.8 petitions, *Beshara*, and his state habeas petitions constituted extraordinary circumstances for the following reasons. Plaintiff had to focus first on his Section 851.8 petitions because of statutory filing deadlines that required him to file these petitions within 60 days of regaining competency in July 2020 and because the state cases at issue in the petitions were being used in evaluators' reports and could result in Plaintiff being committed to a state hospital for life. *Beshara* took precedence over this action because Plaintiff had to file promptly to prevent himself from being involuntarily medicated again. The state habeas petition (criminal writs) took precedence because they concerned Plaintiff's civil commitment and if granted, "would release the petition hold. Out of S.F. Case No. 2219428, last felony under Prop 83, 1 time sex offense could be civilly help pending probable cause and then trial if held;" and because criminal cases take precedence over civil cases. Dkt. No. 49 at 14-15, 21; Dkt. No. 52 at 15-18; Dkt. No. 65 at 6-9. These cases required extensive research and time to litigate. *Id.* In October 2022, Plaintiff had to remove appointed counsel in his represented cases because counsel was ineffective, and Plaintiff had to proceed *pro se*. Representing himself *pro per* required reviewing thousands of documents, hours of legal research, learning psych-diagnosis, preparing investigation orders for a private investigator, and drafting motions. Dkt. No. 49 at 17; Dkt. No. 65-6 at 7-8.

Third, prison-imposed limitations on Plaintiff's ability to litigate constituted extraordinary circumstances. Plaintiff alleges that he had limited time to work on his litigation because he had to attend daily time-intensive mental health groups; that access to the law library was limited because of COVID-19 restrictions; that his life was in "imminent danger" at Coalinga State Hospital; that he was transferred to San Francisco County Jail in October 2021 with limited legal materials; and that, upon his arrival at San Francisco County Jail, he was subject to abuse from the deputies. Dkt. No. 49 at 13, 14, 17; Dkt. No. 65 at 6.

Separately, Plaintiff claims that the following physical / health limitations prevented him from filing earlier. Since June 2023, Plaintiff has had limited use of his hand. Subsequent to a hand surgery, his physician has ordered him to limit his writing to four hours a day. Dkt. No. 65 at 8-9.

United States District Court
Northern District of California

18

United States District Court
Northern District of California

## C.    Defendants' Briefing (Dkt. Nos. 51, 59)

Defendants argue that Plaintiff has not demonstrated extraordinary circumstances because there is no evidence that Plaintiff's mental illness or medications rendered him unable to pursue his legal claims.  In support of this argument, Defendants make the following arguments.  Plaintiff was cogent during his depositions and responded appropriately to the questions posed.  There is no indication that Plaintiff would have been able to function better during the depositions without the medication.  Despite his alleged incapacity, Plaintiff was capable of litigating in 2020 and 2021, as indicated by his litigation activity during that time period – filing petitions to seal his arrest records and post-conviction – and by physician reports describing Plaintiff as oriented to time and place, with functioning memory recall, with the ability to communicate his thoughts articulately and coherently, and reporting that Plaintiff was spending large amounts of time on his litigation.  Plaintiff's litigation of *Beshara* during that 2021-2021 period demonstrates that Plaintiff possessed the mental capacity to litigate during that time period.  In *Beshara*, Plaintiff "drafted highly detailed documents describing events occurring years before, stayed abreast of litigation deadlines, and swore under penalty of perjury that he could testify competently."  Dkt. No. 58-4 at 6.  Plaintiff's decision to prioritize other litigation was entirely in his control.  Plaintiff unreasonably delayed in waiting a year and a half after he was no longer on psychotropic medications to reopen this action.  Defendants would be prejudiced because the evidence is now stale.  *See* Dkt. Nos. 51, 65.  In the alternative, Defendants request an evidentiary hearing to determine whether Plaintiff's medication impaired him to the extent that it prevented him from litigating this action.  *Id.*

## D.    Analysis

The Court has carefully considered the record and finds that Plaintiff has not established that extraordinary circumstances beyond his control prevented him from taking timely action.

As an initial matter, Plaintiff incorrectly characterizes the deference due his pleadings.  Plaintiff correctly argues that the Court must liberally construe his pleadings because he is proceeding *pro se*, Dkt. No. 49 at 2, but incorrectly argues that the Court must accept as true all statements that he makes under penalty of perjury, Dkt. No. 52 at 21.  The directive that the court "accept as true all allegations of material fact and . . . construe those facts in the light most

1    favorable to the plaintiff" applies when screening a complaint for cognizable claims pursuant to 28

2    U.S.C. § 1915A.  *Resnick v. Hayes*, 213 F.3d 443, 446 (9th Cir. 2000).  The Section 1915A

3    screening standard is liberal, but Fed. R. Civ. P. 60(b) relief is to be "used sparingly" and only in

4    "extraordinary circumstances."  *Washington*, 394 F.3d at 1157.  In addition, many of the

5    statements that Plaintiff asks the Court to accept as true are legal conclusions, not statements of

6    fact.  Plaintiff's attestation to these conclusions under penalty of perjury does not make them facts.

7         The Court assumes arguendo that Plaintiff lacked the capacity to pursue litigation from

8    November 2016 to July 2020.[12]  However, Plaintiff has failed to demonstrate extraordinary

9    circumstances to excuse his failure to pursue this case after to July 2020, when he was tapered off

10   his medication.  As discussed in further detail below, the record contradicts Plaintiff's claims that

11   (1) he was only "partially functioning" after his medication was tapered down in June 2020; (2)

12   his mental illnesses – bipolar disorder with attendant delusions, and paranoia – rendered him

13   unable to timely pursue this action; (3) his other litigation was time-sensitive and time-intensive,

14   such that he could not have filed the motion to reopen prior to January 2022; and (4) prison

15   conditions and requirements limited his ability to litigate to the extent that it constituted

16   extraordinary circumstances.

17        ***Partial functioning during tapering down of medication.***  Plaintiff's claim that he was

18   only partially functioning in 2020 and therefore unable to conduct litigation is contradicted by the

19   record.  From August 2020, when Plaintiff's meds were tapered down, to March 2021, when

20   Plaintiff was no longer subject to an involuntary medication order, Plaintiff commenced and

21   pursued extensive *pro se* litigation: (1) *Beshara*, a federal civil rights action in the Eastern District

22   of California, in which he filed eight pleadings during this eight-month time period; (2) a petition

23   to seal and destroy arrest records pursuant to Cal. Penal Code § 851.8(c) in San Francisco County

24   Superior Court, and a motion for reconsideration of the superior court's denial of his petition;

25   (3) a state petition for writ of habeas corpus, Writ No. 7534; and (4) a petition to seal and destroy

26

27   ─────────────
     [12] Involuntary anti-psychotic medication orders in effect from November 2016 to July 2020,
     Plaintiff's complete cessation of litigation activity while fully medicated, and Plaintiff's

28   complaints about his mental state at his depositions arguably indicate that Plaintiff was unable to
     pursue litigation while fully medicated.

United States District Court
Northern District of California

1    arrest records pursuant to Cal. Penal Code § 851.8(c) in Santa Clara County Superior Court.[13]  In

2    addition, after March 2021, Plaintiff was no longer medicated and presumably returned to full

3    functioning, yet Plaintiff did not seek to reopen this action for another nine months.

4         *Mental illness*.  Plaintiff's claim that his mental illnesses prevented him from pursuing this

5    action until January 2022 is also contradicted by the record.  Plaintiff's medical records during the

6    relevant time period indicate that his mental illnesses were in remission.  In the November 17,

7    2020 progress note, Plaintiff's psychiatrist reported that Plaintiff's mental status examination

8    indicated that he was "free from psychosis, depression, anxiety and other issues or problems;"

9    "alert and oriented to time, place and person;" "coherent in his speech, not actually delusional;"

10   and intellectually normal, with no severe impairment in judgment and a rational and logical

11   thought process.  Dkt. No. 58-6 at 18.  In the February 17, 2021 progress note, Plaintiff's

12   psychiatrist concluded that Plaintiff's bipolar disorder was in remission, and reported that, after

13   the discontinuation of Plaintiff's anti-psychotic medications, Plaintiff had not relapsed or showed

14   any signs or symptoms of bipolar condition.  Dkt. No. 58-6 at 15.  The psychiatrist reported that

15   Plaintiff was "currently not actively psychotic, meaning delusional;" and described Plaintiff as

16   intellectually normal, with clear thinking and an organized, mostly rational thought process.  The

17   psychiatrist stated that Plaintiff was not typically paranoid but tended to get argumentative, in

18   particular regarding his diagnosis, treatment and SVPP status.  The psychiatrist noted that Plaintiff

19   was spending "enormous amount of time on his paperwork for legal issues;" "works a lot on his

20   case always engaged in reviewing his case history, past reports, and other legal matters;" and is

21   "totally preoccupied and keeps himself busy working on his legal issues."  Dkt. No. 58-6 at 14.  In

22   the March 3, 2021 progress note, Plaintiff's psychiatrist reported that Plaintiff's bipolar disorder

23   was in remission, with no active symptoms in more recent times, but added new diagnoses of

24   antisocial and narcissist personality.  The psychiatrist reported that Plaintiff "strongly" disagreed

25

26   _____

27   [13] Plaintiff's ability to actively pursue litigation in state court implies that he did not lack legal capacity because California law requires "a person who lacks legal capacity to make decisions" to appear in court by guardian, conservator, or guardian ad litem.  *See* Cal. Civ. Proc. Code §

28   372(a)(1).  Only a person who has capacity may proceed in his own name.  In the four actions listed above, Plaintiff proceeded in his own name.

United States District Court
Northern District of California

1    with the diagnoses of bipolar, and antisocial and narcissist personality disorder.  The psychiatrist

2    further reported that Plaintiff was alert, oriented, and in touch with reality, but also noted that

3    Plaintiff was easily agitated and there was possibility of a mild degree of paranoia implied by

4    Plaintiff's judgmental and suspicious attitude towards certain staff and his unwillingness to work

5    on a reality-based treatment and response.  The psychiatrist noted that Plaintiff was "highly

6    preoccupied with his legal and work and spend[ing] enormous amount of time communicating

7    with his lawyer and other agencies in order his issues," and frequently talking about suing several

8    staff members.  Dkt. No. 58-6 at 8-11.

9           *Plaintiff's other litigation*.  The record and the relevant governing law contradict

10    Plaintiff's claim that he needed to prioritize his Section 851.8 petitions, *Beshara*, or his state

11    habeas petitions.

12           Plaintiff's Cal. Penal Code § 851.8(c) petitions were already untimely at the time he filed

13    these petitions in 2015 and 2016.  The untimeliness could not be rectified by prosecuting these

14    petitions as soon as Plaintiff was able to function.  The 60-day deadline in Cal. Penal Code § 851.8

15    that Plaintiff references does not require that a Section 851.8 petition be filed or renewed after

16    regaining competency; rather, it refers to the time period in which the law enforcement agency or

17    prosecuting attorney must respond to a Cal. Penal Code § 851.8 petition before the petition is

18    considered denied.  Cal. Penal Code § 851.8(b).

19           Plaintiff misrepresents *Beshara* as seeking to prevent himself from being forcibly

20    medicated.  *Beshara* did not seek relief for events happening at the time of filing.  *Beshara*

21    concerned incidents that occurred in 2016, four years prior, and sought monetary damages.

22    *Beshara*, Dkt. No. 1 (complaint); Dkt. No. 21 (order screening complaint, finding that complaint

23    failed to state claim for relief, and dismissing with leave to amend).

24           Plaintiff's claim that his state habeas petitions were time-sensitive is wholly unsupported.

25    Plaintiff has not indicated the subject matter of these state habeas petitions or otherwise provided

26    any evidence to support his claim that these state habeas petitions prevented him from promptly

27    seeking to reopen this action after his medication was tapered down.

28           *Prison Limitations.*  Plaintiff's claim that he was unable to litigate this action due to prison

United States District Court
Northern District of California

1   limitations is contradicted by the record.  Plaintiff claims that he was unable to find time to litigate

2   this action in part because he had to attend daily time-intensive mental health groups, he had

3   limited access to the law library, his life was in danger at Coalinga State Hospital, he was without

4   his legal materials for this case when he arrived at San Francisco County Jail in October 2021, and

5   he was subject to abuse upon arriving at San Francisco County Jail.  However, medical progress

6   notes dated September 11, 2020, November 10, 2020, February 3, 2021, and March 3, 2021,

7   reported that Plaintiff refused to participate in any groups.  Dkt. No. 58-6 at 6-11, 16-19.  And the

8   fact that Plaintiff was able to engage in extensive *pro se* litigation during the relevant time period

9   significantly undermines his claim that the alleged limited law library access, alleged dangerous

10   conditions at Coalinga State Hospital, and alleged abuse suffered at San Francisco County Jail

11   were significant or disruptive enough to prevent Plaintiff from timely prosecuting this action.  To

12   the extent that Plaintiff was without his legal materials for his case in October 2021, this does not

13   explain why he was unable to timely prosecute this action from June 2020 to October 2021.

14          The Court also rejects Plaintiff's argument that the determination by the California state

15   courts and Coalinga State Hospital that Plaintiff is – or was – mentally incompetent and unable to

16   care for himself or make decisions constitutes proof that Plaintiff was unable to pursue this action

17   between August 2020, when Plaintiff's meds were tapered down, to January 2022, when he sought

18   to reopen the case.  The competency findings were made in the context of the involuntary

19   medication order, which was no longer in effect as of mid-2020.[14]

20          Weighing all the relevant factors and evaluating the circumstances of this case, the Court

21   concludes that Plaintiff has not demonstrated that he is entitled to relief under Fed. R. Civ. P.

22   60(b)(6).

23          The first factor – showing of extraordinary circumstances – weighs against Plaintiff.  As

24   explained above, even if Plaintiff's forced medication from November 2016 to June 2020

25

26   [14] Plaintiff references Cal. Penal Code §§ 1367(a) and 1370(a)(2)(B)(i)(I).  These Penal Code
     sections are inapplicable here because they apply to criminal proceedings and Plaintiff was subject
27   to a civil commitment pursuant to the Sexually Violent Predator Act.  Cal. Penal Code §§ 1367(a),
     1370(a)(2)(B)(i)(I).  Moreover, the competency finding that Plaintiff repeatedly references is a
28   finding regarding Plaintiff's ability to make decisions regarding his medication, which is distinct
     from a finding that Plaintiff is unable to pursue and maintain litigation.

United States District Court
Northern District of California

constituted extraordinary circumstances, Plaintiff has not made a showing of extraordinary circumstances for the time period from June 2020 to January 28, 2022. During this time period, Plaintiff actively pursued at least four different legal actions. In addition, the reasons Plaintiff proffers for being unable to pursue this litigation until January 28, 2022 are either contradicted by the record or were not circumstances beyond his control.

The second factor – diligence in pursuing the issue – also weighs against Plaintiff. Plaintiff has been filing and pursuing other court actions since sometime in 2020 but did not file the motion to vacate judgment in this case until January 2022.

The third and fourth factors – interest in finality and delay between the finality of the judgment and this motion – also weigh against Plaintiff. This case was closed nearly five years ago and witnesses' memories have likely faded.

The fifth factor – degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought – also weighs against Plaintiff because Plaintiff has not demonstrated extraordinary circumstances.

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

1.      The Court GRANTS Defendants' request to file under seal certain portions of their supplemental briefing. Dkt. No. 58.

2.      The Court GRANTS Defendants' request for judicial notice. Dkt. No. 60.

3.      The Court DENIES Plaintiff's request for counsel as moot. Dkt. No. 65 at 10.

4.      The Court DENIES Plaintiff's motion to vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(6). Dkt. No. 49. This case remains closed.

This order terminates Dkt. Nos. 49, 58, 60, 65 at 10.

**IT IS SO ORDERED.**

Dated:   9/12/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

24